UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re SHEFA, LLC,

    Debtor,
_____/

CITY OF SOUTHFIELD,

    Appellant,

v.

SHEFA, LLC,

    Appellee.
_____/

Civil Case No. 18-10073
Honorable Linda V. Parker

Bankruptcy Case No. 14-42812
Honorable Thomas J. Tucker

# **OPINION AND ORDER**

This matter is before the Court as an appeal from the United States Bankruptcy Court for the Eastern District of Michigan. The City of Southfield ("City") appeals the Honorable Thomas J. Tucker's decision, dated December 22, 2017, denying the City's "Motion to Compel Consummation of Confirmed Plan of Reorganization." *See In re Shefa*, 579 B.R. 438 (Bankr. E.D. Mich. 2017). The Plan of Reorganization refers to the "Third Amended Debtor's Combined Disclosure Statement and Plan of Reorganization" (hereafter "Plan") confirmed by

the bankruptcy court, the Honorable Phillip J. Shefferly presiding, in the bankruptcy proceedings involving Debtor Shefa, LLC ("Debtor").[1]

In this appeal, the City filed an initial brief on April 9, 2018. (ECF No. 10.) Debtor filed a response brief on May 16, 2018. (ECF No. 14.) The City filed a reply brief on June 6, 2018. (ECF No. 17.) The parties have requested oral argument; however, the Court finds the facts and legal arguments sufficiently presented in the parties' pleadings and in the bankruptcy court's December 22, 2017 decision. Therefore, the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).

## I. Factual and Procedural Background

Debtor filed a Chapter 11 bankruptcy case on February 25, 2014. Debtor's sole asset is real property located at 16400 J.L. Hudson Drive, Southfield, Michigan ("Property"). The Property is the site of a 14-story, 427 room hotel built on nine acres in 1974, known at different times as the Plaza Hotel and the Michigan Inn. The Property has been vacant and shuttered since October 2010. Debtor acquired the Property in 2009.

At that time, there were substantial delinquent real estate taxes and water and sewerage charges for the Property owed to the City. Taxes had not been paid

---

[1] On November 20, 2018, an order was entered recusing Judge Shefferly from the bankruptcy matter and appointing Judge Tucker. Order, *In re Shefa*, No. 14-42812 (Bankr. E.D. Mich. Nov. 20, 2018), ECF No. 232.

since 2005, and no payments for water and sewerage charges had been made since July 2009. Under Michigan law, cities turn over unpaid taxes and water and sewerage charges to the local counties for collection after one year of delinquency. Oakland County therefore held the City's claim against the Property. Oakland County moved to foreclose on the Property pursuant to its statutory authority under Michigan law. Debtor then filed its Chapter 11 bankruptcy petition. As of the petition date, Debtor owed the City a total of $3.787 million, consisting of $1.917 million in delinquent real estate taxes and $1.87 million for water and sewerage charges.

Debtor submitted the Plan on December 7, 2015, which the bankruptcy court confirmed in an order entered February 19, 2016 ("Confirmation Order"). The Plan contemplated, among other things, that Debtor would make a substantial payment to Oakland County and obtain financing in order to renovate and reopen the Property as a hotel. The Plan included specific requirements Debtor had to satisfy and procedures and remedies if Debtor failed to perform those obligations, which are found mainly in paragraph 5 of the Confirmation Order. As described by the bankruptcy court:

> In summary, the confirmed Plan provides that if the Debtor defaults in certain ways, the City can serve a written notice of the default on the Debtor, after which notice the Debtor would have a specified period of time to cure the default. (There are different cure periods, depending on the nature of the default.) If the Debtor then failed to cure the default, that uncured default would constitute an

> "Event of Default." Such an Event of Default—*i.e.*, a default by the Debtor that was not timely cured after the City gave the Debtor written notice of it—gives the City the right to use certain specific remedies. The remedies that are relevant to the present dispute were two specific, alternative actions by which the City hoped to obtain the transfer of the Property to itself.
>
> The first of these actions … is that the City could record a deed to the Property that the Debtor had executed in the City's favor and placed in escrow with a "Title Company" (defined to mean "a title company mutually acceptable to the Debtor and the City"). The City would obtain the release of the deed from the Title Company, so the City then could record the deed, merely by giving "a written certification [to the Title Company] from the City's counsel, attesting to" an Event of Default by the Debtor.
>
> The Second, alternative remedy for an Event of Default … was that the City could use a power of attorney that the Debtor had executed, "in favor of the City's Mayor and City Clerk, authorizing them to execute a deed to the Property in favor of the City." Such power of attorney also was to be held in escrow by the Title Company. …

*In re Shefa*, 579 B.R. at 442 (footnotes omitted).

The Plan became effective ("Effective Date") fifteen days after the bankruptcy court entered the Confirmation Order. Pursuant to Paragraph 5 of the Plan, Debtor was required to take certain actions on the Effective Date or within a specific time thereafter. On March 4, 2016, the City's attorney sent a letter to counsel for Debtor listing six actions Debtor was obligated to perform on the Effective Date, for which Debtor had defaulted:

> (a) remitting $1.8 million to the Oakland County Treasurer for the pre-petition taxes and water and sewerage charges;

4

> (b) executing and delivering a Deed to the Property to be held in escrow by the Title Company;
>
> (c) executing and delivering a limited power of attorney to the City;
>
> (d) executing and delivering a mortgage to the City in the City's favor, encumbering the Property;
>
> (e) delivering the estimated 2016 water and sewer charges of $60,000; and,
>
> (f) furnishing a copy of the recorded discharge of mortgage held by Fernand Shlomo Soultan.

(*See* City's Mot. Ex. 3, ECF No. 7 at Pg ID 195-96.) In a letter dated September 7, 2016, counsel for the City informed Debtor's counsel of another default: "failure to timely pay the 2016 summer taxes assessed against the Property prior to the assessment of penalties and interest." (*Id.* at Pg ID 197-97.) The City acknowledges that Debtor timely cured the defaults identified in these letters. (*Id.* at Pg ID 164); *see also* 12/13/17 Hr'g Tr. at 17, *In re Shefa*, No. 14-42812 (Bankr. E.D. Mich. Feb. 5, 2018), ECF No. 251.

As required by the Plan, within one hundred and eighty (180) days of the Effective Date, Debtor obtained site plan approval from the City to renovate the Property. The site plan expired one year later, however, without Debtor expending the $2.1 million required by the Plan and Confirmation Order to physically improve the Property. The City, in fact, claims Debtor failed to make any sufficient progress toward renovating the Property as contemplated by the Plan and

5

Confirmation Order. According to the City, Debtor did engage in demolition work on the Property without a permit, as required by City ordinance. Debtor sought an extension of the site plan approval, but the City did not grant the request.

Counsel for the City sent a letter to Debtor's counsel dated January 30, 2017, asserting *inter alia* that Debtor's "fail[ure] to take any action in furtherance of the repair and improvement of the property" constituted a default under the terms of the Confirmation Order and Mortgage. (City's Mot. Ex. 3, ECF No. 7 at Pg ID 199-200.) The City's counsel sent another letter to Debtor's counsel on August 23, 2017, asserting that the expiration of the site plan approval, without Debtor having obtained any of the necessary permits for the development of the Property[,]" constituted a default. (*Id.* at Pg ID 201-02.)

On October 5, 2017, the City moved to reopen the bankruptcy proceedings. The bankruptcy case subsequently was reopened, and the City filed its motion to compel consummation of the Plan on October 20, 2017. In that motion, the City argued that Debtor had defaulted under the terms of the Plan, thus entitling the City to obtain title to the Property. Because the methods provided for under the Plan to effectuate that transfer would not enable the City to secure title insurance, the City also asked the bankruptcy court to direct Debtor to deed the Property to the City. The motion was fully briefed.

On December 13, 2017, the bankruptcy court held a hearing on the City's motion. As indicated, the court denied the motion in a decision issued December 22, 2017, and this appeal followed.

## II. Standard of Review

The parties do not agree on the standard of review to be applied in this case. "The standard of review on appeal is determined by the nature of the action taken below by the bankruptcy court." *In re Terex Corp.*, 984 F.2d 170, 172 (6th Cir. 1993); *see also In re Conco, Inc.*, 855 F.3d 703, 709 (6th Cir. 2017). As the Sixth Circuit summarized in *In re Conco*:

> Where a bankruptcy court "modifies" a plan, the decision is subject to de novo review. Where a bankruptcy court "applies" the Bankruptcy Code, its determinations are also subject to de novo review. Where a bankruptcy court merely "interprets" an ambiguous plan under its equitable authority, the decision is reviewed for an abuse of discretion.

855 F.3d at 709 (internal citations omitted). When a bankruptcy decision is reviewed de novo, the appellate court reviews the law independently and gives no deference to the conclusions of the bankruptcy court. *Myers v. IRS (In re Meyers)*, 216 B.R. 402, 403 (B.A.P. 6th Cir.1998). "Although the interpretation of an amended plan of reorganization is analogous in many respects to the construction of a contract," Sixth Circuit precedent requires a reviewing court to "review a

bankruptcy court's interpretation of its own decision with significant deference."[2]
*In re Conco*, 855 F.3d at 709 (citing *In re Dow Corning, Corp.*, 456 F.3d 668, 676 (6th Cir. 2006)).

To the extent the bankruptcy court makes findings of fact, those are reviewed under the clearly erroneous standard. Fed. R. Bankr. P. 8013. "A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Mathews (In re Matthews)*, 209 B.R. 218, 219 (B.A.P. 6th Cir. 1997) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). "[I]f a question is a mixed question of law and fact, then [the reviewing court] must break it down into its constituent parts and apply the appropriate standard of review for each part." *Investors Credit Corp. v. Batie (In re Batie)*, 995 F.2d 85, 88 (6th Cir. 1993).

"In order to determine whether a bankruptcy court's decision 'merely interpreted a plan, as opposed to modifying it, we turn to the reasoning and

---

[2] The City contends that because the bankruptcy matter was reassigned to Judge Tucker after the motion to compel was filed, the bankruptcy court was not interpreting its own prior decision (that being, the Confirmation Order which Judge Shefferly signed) and thus Judge Tucker's decision on the motion to compel is not entitled to "significant deference." The City cites no authority for applying a different standard of review or less deference under this scenario. As both decisions were technically rendered by "the bankruptcy court," this Court is not persuaded that it should disregard Sixth Circuit precedent regarding the applicable standard of review.

8

language in the bankruptcy court's order.'" *In re Conoco*, 855 F.3d at 709 (quoting *Dow Corning*, 456 F.3d at 675) (additional quotation marks and citation omitted). Here, the bankruptcy court addressed two issues in its December 22, 2017 decision: (1) has there been an "Event of Default" entitling the City to relief; and (2) is the relief sought by the City permissible under 11 U.S.C. § 1142. *See In re Shefa*, 579 B.R. at 445-48.

As to the first issue, the bankruptcy court concluded that "the City has not alleged any set of facts that constitute an 'Event of Default,' as that phrase is defined by the confirmed Plan." *Id.* at 445. The bankruptcy court considered three possible "Event[s] of Default": (1) the failure to obtain a renewal of the site plan approval after its one-year expiration; (2) the performance of demolition work on the Property without a permit; and (3) the lack of sufficient progress toward renovating the Property, as contemplated by the Plan. *Id.* at 445-47. As discussed further below, the bankruptcy court looked solely to the terms of the Plan and Confirmation Order to conclude that these were not "Event[s] of Default." *Id*. Because the bankruptcy court's decision regarding this issue was based on its interpretation of the Plan, this Court must review it for an abuse of discretion.

In comparison, the bankruptcy court's resolution of whether the relief the City requested was permissible under § 1142 involved purely a legal issue. There was no dispute that the Plan did not provide for the relief the City sought. As such,

the bankruptcy court was not tasked with interpreting the Plan to determine whether that relief was available. *See id.* at 447 ("Such relief clearly is not provided in the confirmed Plan.") Instead, the bankruptcy court had to decide whether § 1142 empowered it to impose the relief requested in order to consummate the Plan. The bankruptcy court's application of the Bankruptcy Code is subject to de novo review.

### III. Applicable Law and Analysis

The Court begins with the bankruptcy court's conclusion that there was no "Event of Default." This is because, if that holding was correct, there is no reason for this Court to decide whether § 1142 permits the remedy the City seeks for the default.

The first question that must be answered on the default issue is what "Event[s] of Default" are properly before this Court. Debtor argues that the City asserts defaulted obligations in its appeal brief that it never presented to the bankruptcy court. Debtor specifically refers to the City's reliance in its appeal brief on Debtor's failure to execute a loan agreement with KFG Southfield in an amount up to $3 million and Debtor's failure to obtain financing of approximately $2 million through SMi ENERPRO for the repair and/or replacement of the heating and cooling system, the elevators, and other necessary infrastructure items. (ECF No. 14 at Pg ID 737-38.) "Ordinarily an appellate court does not give

10

consideration to issues not raised below." *Hormel v. Helvering*, 312 U.S. 552, 556 (1941); *see also In re Holder*, No. 1994 WL 163760, at *2 (6th Cir. May 2, 1994) (citing *Foster v. Barilow*, 6 F.3d 405, 407 (6th Cir. 1993)) (indicating that "[t]his rule has been applied to refuse consideration to arguments litigants failed to raise initially in the bankruptcy court"). Deviations from the rule "are permitted in exceptional cases or particular circumstances, or when the rule would produce a miscarriage of justice." *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1461 (6th Cir. 1988) (citations and internal quotation marks omitted).

In the brief filed in support of its motion to compel, the City argued that "[o]ther than performing tasks necessary for avoiding the issuance of citations, no renovations have been performed since entry of the Confirmation Order." (City's Br. in Supp. of Mot. at 4, ECF No. 7 at Pg ID 164.) The City also contended that "[t]he site plan expired by its terms on August 18, 2017 without the Debtor having obtained a single permit from the City for repairs or renovation." (*Id*. at 5, Pg ID 165.) In its reply brief, the City also raised the issue of demolition work being performed on the Property without the necessary permits. (City's Reply Br. at 3, ECF No. 7 at Pg ID 461.) At the December 13, 2017 hearing on the City's motion, the bankruptcy court expressly asked the City's attorney to list the uncured defaults justifying the remedies contemplated in the Confirmation Order. *See* 12/13/17 Hr'g Tr. at 15-16, *In re Shefa* (Bankr. E.D. Mich. Feb. 5, 2018), ECF No. 251.

Counsel for the City identified the lack of progress renovating the Property, the performance of demolition work without the required permits, and the lapse of the site plan approval. *Id*. at 15-18. Counsel subsequently added: "Plus, based upon what we have seen, there's no present ability on the part of the debtor to consummate the [P]lan as contemplated. They don't have the funds available, which is directly in conflict with what was represented in the disclosure statement." *Id*. at 17-18. However, counsel agreed with the bankruptcy court that this is not an Event of Default but rather "a function of [Debtor's] inability to consummate the [P]lan" for which different relief is afforded parties in interest. *Id*.

The City did not assert before the bankruptcy court Debtor's failure to obtain the KFG and SMi Enerpro financing as defaults permitting the City to invoke the remedies set forth in the Plan and Confirmation Order. This Court does not believe that this case presents circumstances justifying consideration of arguments not raised below. *See Hormel, supra*. In any event, even if the Court were to address the City's arguments, it would find that Debtor's failure to secure this financing is not a default entitling the City to the remedies set forth in paragraph five of the Confirmation Order. Neither the Plan nor Confirmation Order identify securing of the KFG or SMi Enerpro financing as obligations Debtor must satisfy. In fact, the loans are not even mentioned in the Confirmation Order. They are not included in the "Settlement Terms" between the City, Oakland County, and Debtor. (*See* Plan

¶ 4.2, ECF No. 7 at Pg ID 101-02; Confirmation Order ¶ 5, ECF No. 7 at Pg ID 146-47.) Instead, the loans are set forth in the Plan only to identify the source of funding for Debtor's plan payments and to renovate the Property.[3]

The bankruptcy court addressed the three alleged "Event[s] of Default" in its December 22, 2017 decision. First, with respect to the expired site plan approval, the bankruptcy court found that "[n]othing in the confirmed Plan requires the site plan approval to remain in effect, once it was timely obtained by the Debtor." (Order at 12, ECF No. 7 at Pg ID 596.) Next, the bankruptcy court addressed the City's claim that demolition work was performed without the required permits, finding that "the City has never issued any written notice of default to the Debtor for this alleged default under the Plan." (*Id*. at 12-13, Pg ID 596-97.) Lastly, the bankruptcy court concluded that Debtor's alleged lack of progress in the renovation of the Property did not state an "Event of Default" as nothing in the Plan imposes a time limit, deadline or milestone for Debtor to expend the $2.1 for physical improvements to the Property. (*Id*. at 13, Pg ID 597.) The bankruptcy court wrote: "There is no ambiguity in the Plan about this, and the confirmed Plan

---

[3]The bankruptcy court inquired about the KFG funding at the confirmation; however, the court made clear that information about the loans was relevant only to its determination of whether there was sufficient money to fund the Plan for the creditors, not to turn the Property into the income producing venture anticipated for the future. *See* Audio File 1/22/16 Hr'g, *In re Shefa*, No. 14-42812 (Bankr. E.D. Mich. filed Jan. 22, 2016), ECF No. 167.

13

must be applied and enforced as written." (*Id.* at Pg ID 597-98.) The bankruptcy court did not abuse its discretion when resolving the default issue.

A confirmed plan "is effectively a new contract between the debtor and its creditors" and thus is interpreted according to general contract principles. *In re Conco*, 855 F.3d at 711 (citing *Dow Corning*, 456 F.3d at 676 and 11 U.S.C. § 1141(a)). "'State law governs those interpretations[.]'" *Id.* Under Michigan law, "'the cardinal rule in the interpretation of contracts is to ascertain the intention of the parties.'" *City of Grosse Pointe Park v. Mich. Mun. Liab. & Prop. Pool*, 702 N.W.2d 106, 113 (Mich. 2005) (quoting *McIntosh v. Groomes*, 198 N.W. 954, 955 (Mich. 1924)). Whenever possible, the parties' intent is to be discerned from "the language in the contract, giving it its ordinary and plain meaning if such would be apparent to a reader of the instrument." *Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776, 780 (Mich. 2003). "[I]f the language of a written contract is subject to two or more reasonable interpretations or is inconsistent on its face, the contract is ambiguous, and a factual development is necessary to determine the intent of the parties." *Petovello v. Murray*, 362 N.W.2d 857, 858 (Mich. Ct. App. 1984). Nevertheless, "'if a contract, however inartfully worded or clumsily arranged, fairly admits of but one interpretation it may not be said to be ambiguous or, indeed, fatally unclear.'" *City of Grosse Pointe*, 702 N.W.2d at 114 n. 8 (quoting *Raska v. Farm Bureau Mut. Ins. Co. of Mich.*, 314 N.W.2d 440, 441 (Mich. 1982)).

As the bankruptcy court correctly found, neither the Plan nor Confirmation Order required the site plan approval to remain in effect once it was timely obtained by Debtor. The Plan (§ 4.2.2.E, ECF No. 7 at Pg ID 102) and Confirmation Order (¶ 5(*o*), ECF No. 7 at Pg ID 149) only required Debtor to obtain site plan approval within one hundred and eighty days of the Effective Date, which the City conceded was timely accomplished. (City's Br. in Supp. of Mot. at 4, ECF No. 7 at Pg ID 164.) The parties—or at least the City—knew that approvals expire after one year and could have included a requirement for renewal in the Plan if the intent was for the approval to remain current.

The Plan and Confirmation Order are similarly silent with respect to a timeframe by which Debtor had to renovate the Property or expend the $2.1 million in physical improvements to the Property. The parties, however, imposed time limits and deadlines for other actions required by Debtor. As such, the bankruptcy court did not abuse its discretion when concluding that the lack of progress in the renovation did not entitle the City to invoke the remedies provided for in the Event of Default.

The City has never identified the provision of the Plan or Confirmation Order violated by Debtor's alleged engagement of demolition work without the required permits. At the hearing on the City's motion to compel, the City's attorney instead argued that performing demolition work without obtaining the

15

required permit violated applicable law and, thus, the mortgage the Debtor gave the City pursuant to the settlement. *See* 12/13/17 Hr'g Tr. at 16, *In re Shefa*, No. 14-42812 (Bankr. E.D. Mich. filed Feb. 5, 2018), ECF No. 251. Neither the Plan nor Confirmation Order include a breach of the mortgage terms as an "Event of Default" triggering the remedies set forth therein. Moreover, as the bankruptcy court found, the City never sent a written "Default Notice" to Debtor with respect to this alleged default, which is a precondition to the default—if uncured—becoming an "Event of Default" for which the City could seek the remedies set forth in the Plan and Confirmation Order. (*See* Plan ¶ 4.2.2A, ECF No. 7 at Pg ID 315; Order at 12-13, ECF No. 7 at Pg ID 596-97.) As such, the bankruptcy court correctly concluded that this allegation did not entitle the City to the remedies it sought.

## IV. Conclusion

For the foregoing reasons, this Court holds that the bankruptcy court did not abuse its discretion in concluding that the City failed to identify an Event of Default by Debtor entitling the City to the remedies in the Plan and Confirmation Order. As such, the Court finds it unnecessary to decide whether the alternative remedies sought by the City are permissible under § 1142.

Accordingly,

**IT IS ORDERED** that the bankruptcy court's December 22, 2017 Order is **AFFIRMED**.

s/Linda V. Parker
LINDA V. PARKER
UNITED STATES DISTRICT JUDGE

Dated: February 25, 2019

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, February 25, 2019, by electronic and/or U.S. First Class mail.

s/R. Loury
Case Manager